IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| CRAIG L. WHITE and VONNIE D. WHITE, ) | |
| ) | CASE NO. BK12-42639 |
| Debtor(s). ) | A13-4010 |
| CATERPILLAR FINANCIAL SERVICES ) | |
| CORPORATION, ) | CHAPTER 7 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CRAIG L. WHITE and VONNIE D. WHITE, ) | |
| ) | |
| Defendants. ) | |

ORDER

This matter is before the court in this adversary proceeding on the plaintiff's motion for summary judgment (Fil. No. 35) and resistance by the defendants (Fil. No. 41). Galen E. Stehlik represents the debtor-defendants, and Richard P. Garden, Jr. represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

For the reasons discussed below, I find that by renouncing his inheritance under the facts and circumstances of this case, Craig White "transferred . . . property of the debtor, within one year before the date of the filing of the petition" for purposes of 11 U.S.C. § 727(a)(2)(A). However, a trial is necessary to determine whether Mr. White made the transfer with intent to hinder, delay, or defraud creditors. Therefore, the motion is denied.

*Background*

Caterpillar Financial Services Corporation ("CAT") is a creditor in this case. It holds a judgment in excess of $1,000,000.00 against the debtors. The balance owed on the judgment as of the petition date in December 2012 was approximately $835,000.00. Prior to the petition date, Mr. White's father passed away and he stood to inherit more than $500,000.00 in real and personal property. Mr. White disclaimed his interest in his father's estate, and the property was transferred to two of his children, who then transferred the real property to a limited liability company formed by one of them. CAT filed this adversary proceeding against the debtors seeking a denial of discharge under § 727(a)(2)(A) on the grounds that the debtors transferred property within one year before the filing of the bankruptcy petition with the intent to hinder, delay, or defraud a creditor. CAT now moves for summary judgment on its claim.

For purposes of this motion, the following facts are undisputed:

1. This adversary proceeding arises out of the Chapter 7 bankruptcy case of Craig L. White and Vonnie E. White.

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 1409.

3. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (J).

4. Plaintiff CAT is the successor by merger to FCC Equipment Financing, Inc.

5. The defendants are individuals who at all material times hereto were residing in Hall County, Nebraska.

6. On December 11, 2012, the date that the defendants filed a voluntary petition for relief, the defendants were indebted to CAT by reason of a judgment entered by the District Court of Hall County, Nebraska, on April 9, 2012. At the time it was entered, the judgment was in the amount of $1,142,970.59 with interest accruing on the judgment debt from March 31, 2012, at $262.74 per day and $192.66 costs, for a total of $1,143,163.25 plus interest. However, due to collection activity the balance owed on the judgment as of the date of bankruptcy filing had been reduced to approximately $835,000.00

7. Gerald White ("Gerald") was Craig White's father. Gerald died on September 12, 2011. Gerald's estate was opened in the County Court of Hall County, Nebraska, at Case No. PR 11-181.

8. Pursuant to Gerald's Last Will and Testament, Gerald bequeathed to Craig White an undivided one-half interest in the farm that was valued at $510,637.00, as well as a one-fourth interest in the residue and remainder of his estate that was valued at $235,563.66. Craig's total inheritance was valued at more than $560,000.00.

9. On June 7, 2012, Craig White filed a Renunciation and Disclaimer of Interest in Probate Estate with the probate court, thereby purporting to renounce his share of the estate of Gerald R. White.

10. On August 13, 2012, the Whites filed the Craig White Renunciation with the Hall County Register of Deeds as Instrument No. 201206669.

11. On August 13, 2012, Brandi Ganatra, the Whites' daughter, filed a Renunciation and Disclaimer of Interest in Probate Estate with the probate court, thereby purporting to renounce any interest that she may have had in the estate of Gerald R. White. On

that same date the renunciation was filed with the Hall County Register of Deeds as Instrument No. 201206670.

12. On August 2, 2012, Cindy S. Ellis executed a Deed of Distribution of Personal Representative (the "Deed of Distribution") that purports to convey the farm to Craig's children, Cody T. White ("Cody") and Casondra J. Gustin ("Casondra"), as tenants in common. The Deed of Distribution was filed with the Hall County Register of Deeds on August 13, 2012, as Instrument No. 201206671.

13. On August 8, 2012, Cody executed a Waiver of Accounting and Informal Closing Receipt, acknowledging the delivery and receipt of the real and personal property identified in the Schedule of Distribution. The Waiver of Accounting and Informal Closing Receipt was filed with the Hall County Probate Court on August 20, 2012.

14. On August 8, 2012, Casondra executed a Waiver of Accounting and Informal Closing Receipt, acknowledging the delivery and receipt of the real and personal property identified in the Schedule of Distribution. Casondra's Waiver of Accounting and Informal Closing Receipt was filed with the Hall County Probate Court on August 20, 2012.

15. On August 20, 2012, Cindy S. Ellis caused a Schedule of Distribution to be filed with the Hall County Probate Court that reflects Cody and Casondra received the portion of the estate of Gerald R. White originally bequeathed to Craig White.

16. On August 3, 2012, Casondra formed CNC Investment Properties, L.L.C.

17. On August 8, 2012, Cody and Casondra filed a quitclaim deed conveying the farm to CNC.

18. CAT levied execution on the farm and an execution sale was set for December 12, 2012.

19. The Whites filed their Chapter 7 petition on December 11, 2012, thus staying the execution sale.

*Discussion*

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)

(quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008). *See also Celotex Corp.*, 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

CAT believes it is entitled to summary judgment denying the debtors[1] a discharge under 11 U.S.C. § 727(a)(2)(A) on the grounds that Craig White transferred property within one year before the filing of the bankruptcy petition with the intent to hinder, delay, or defraud a creditor. The debtors filed their bankruptcy case on December 11, 2012. CAT asserts that the renunciation by Craig White filed in the probate proceeding on June 7, 2012, and in the real estate records on August 13, 2012, was a transfer in violation of § 727(a)(2)(A). The debtors assert that the renunciation relates back to the date of Gerald White's death (September 12, 2011), which was more than one year prior to bankruptcy filing, making § 727(a)(2)(A) inapplicable.

Section 727(a)(2) of the Bankruptcy Code denies a debtor a discharge if:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

To prevail on the complaint, CAT must show that (1) the debtors' actions took place within twelve months prior to the filing of their petition for bankruptcy relief; (2) the debtors took the actions with the intent to hinder, delay or defraud their creditors; (3) the debtors themselves took the actions; and (4) the debtors' actions consisted of transferring or concealing property. *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); *City Nat'l Bank of Ft. Smith, Ark. v. Bateman (In re Bateman)*, 646 F.2d 1220, 1222 (8th Cir. 1981). There is a presumption of fraud in § 727(a)(2) cases when a debtor transfers valuable property without payment. *Cadlerock Joint Venture II, L.P. v. Sandiford (In re Sandiford)*, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008) (citing *The Abbott Bank-Hemingford v. Armstrong (In re Armstrong)*, 931 F.2d 1233, 1239 (8th Cir. 1991)). "Once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors." *Id.*

---

[1] CAT seems to believe discharge should be denied against both debtors, but makes no allegations against Vonnie White.

CAT argues that the renunciation by Craig White on June 7, 2012, of his interest in the remainder of his father's probate estate was in and of itself a "transfer" in violation of 11 U.S.C. § 727(a)(2)(A)[2]. The argument seems to be that regardless of the relation-back effect of the renunciation statute, the act of renunciation is a transfer.

CAT raises two arguments in support of its position. First, it argues that debtor's renunciation was not timely effected as to Craig White's inheritance of his father's one-half interest in the farm. Therefore, the property became property of the debtors, who transferred it to prevent creditors such as CAT from executing on it. CAT believes a renunciation of an interest in real estate must be filed, by statute, with the register of deeds within nine months of the date of death. In this case, the renunciation was recorded eleven months after the debtor's father passed away. CAT argues that the delay in recording the renunciation prevents it from relating back to the date of death, which means the real property belonged to the debtors until they transferred it to their children to protect it from CAT's collection efforts.

Second, CAT argues that the renunciation and its relation-back effect are of no consequence here because the debtors' property rights are determined under federal law. This argument, based on the interpretation of a United States Supreme Court case, asserts that the scope of the Bankruptcy Code's definition of "property" includes the rights that passed to the debtor upon his father's death, which cannot be altered by a legal fiction developed under state law to avoid inheritance taxes.

Because the property-right argument is dispositive, the timeliness of the renunciation need not be addressed here.

The Supreme Court case arose from an Eighth Circuit Court of Appeals decision to deny an attempt to disclaim an inheritance to thwart the attachment of federal tax liens. The Supreme Court noted that the taxpayer in that case received, under state law, "a valuable, transferable, legally protected right to the property at issue" upon his mother's death. *Drye v. United States*, 528 U.S. 49, 60 (1999). He also had a right under state law to disclaim that interest, which was an exercise of dominion over the property such that his "power to channel the estate's assets [to himself if he does not disclaim or to another heir if he does disclaim] warrants the conclusion that Drye held 'property' or a 'righ[t] to property' subject to the Government's liens." *Id.* at 60-61. The Court described this "power to channel" the property of the decedent as a "control rein he held under state law" which "rendered the inheritance 'property' or 'rights to property'" which belonged to him and therefore was subject to federal tax liens against him. *Id.* at 61.

At least one bankruptcy court has adopted the same reasoning to bring inherited property into the property of the bankruptcy estate in certain situations, even when a debtor has executed a pre-petition disclaimer or renunciation of his interest.

---

[2] CAT makes this argument only as to the remainder of the estate, but it would seem the arguments would equally apply to the real estate interests.

> The U.S. Supreme Court held unambiguously that this artificially-created state doctrine cannot modify a substantive Federal statute. There is nothing in the opinion to suggest that its clearly articulated ruling is limited to a tax lien application. To the contrary, the opinion broadly suggests that, in all contexts, the result would be the same.

*In re Kloubec*, 247 B.R. 246, 256 (Bankr. N.D. Iowa 2000).[3]

This court recognizes that other circuit courts have subsequently ruled that disclaimers of an inherited interest are not transfers, declining to apply *Drye* in the bankruptcy context. *Gaughan v. Edward Dittlof Revocable Trust (In re Costas)*, 555 F.3d 790 (9th Cir. 2009); *Laughlin v. Noveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417 (5th Cir. 2010) (both cases apply a "deferential approach to state property law" in holding that the relation-back of a renunciation of an inheritance means the debtor never obtained possession of the property and could not have transferred it). These cases distinguish *Drye* because it was decided under the Internal Revenue Code and suggest that its applicability should be limited only to that context.

However, the *Costas* and *Laughlin* line of cases can be differentiated as reading *Drye* too narrowly, perhaps to mitigate the harsh result that would otherwise occur if renunciations are considered to be potentially fraudulent transfers. The *Kloubec* court correctly observed that nothing in *Drye* limits it to a tax lien situation. While the Supreme Court in *Drye* said the Internal Revenue Code intentionally defines "property" broadly, the Bankruptcy Code interprets the term broadly as well. Likewise, the distinction based on the fact that the tax lien had attached before the disclaimer was executed is not relevant because if there was a property interest to which the IRS's lien could attach, then there was also a property interest in Gerald White's estate that could be transferred by the disclaimer. Further, just as the tax lien had attached in *Drye*, the judgment liens here had attached before Craig White's disclaimer. The relation-back doctrine is simply a legal fiction created by state law. It has no applicability when trying to determine property of the bankruptcy estate.

The concept of renunciation as a legislatively created legal fiction is bolstered by the reference in the Nebraska legislative history to the renunciation provisions being "primarily designed as an aid to post[-]mortem tax planning." Letter of Dec. 15, 1972, from Donald H. Kelley (comparing renunciation sections of Uniform Probate Code, as proposed for enactment in Nebraska, to existing sections of Nebraska statutes), included with Introducer's Statement of Purpose for LB 354, dated Feb. 21, 1973.

---

[3]The outcome would be different if the debtor was alleged to have committed fraud under a state statute. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764 (8th Cir. 2000). *See Essen v. Gilmore*, 607 N.W.2d 829 (Neb. 2000) (holding that the renunciation of an interest in a decedent's estate which is properly effected pursuant to statute, and prior to distribution of estate assets, is not a "transfer," and therefore does not constitute a "fraudulent transfer" under the Nebraska Uniform Fraudulent Transfer Act).

The statute's purpose as a tool for dealing with inheritance taxes is unlikely to have been intended to accommodate debtors' attempts to frustrate their creditors by transferring assets out of their reach.

This finding that the renunciation was in fact a transfer, unaffected by the relation-back doctrine, fulfills one of the elements of § 727(a)(2). Of the remaining elements mentioned above – (1) the debtors' actions took place within twelve months prior to the filing of their petition for bankruptcy relief; (2) the debtors took the actions with the intent to hinder, delay or defraud their creditors; and (3) the debtors themselves took the actions – the only element not readily established by the uncontroverted facts in the record is the element of intent to hinder, delay or defraud creditors.

A debtor's actual, subjective intent to hinder, delay or defraud is a requisite element of denial of a discharge. *Helena Chem. Co. v. Richmond (In re Richmond)*, 429 B.R. 263, 304 (Bankr. E.D. Ark. 2010). Proving the requisite actual intent with direct evidence is difficult, so actual intent may be inferred from the facts and circumstances of the debtor's conduct. *Korte v. United States (In re Korte)*, 262 B.R. 464, 472-73 (B.A.P. 8th Cir. 2001).

Factors to consider in determining whether a debtor acted with intent to hinder, delay or defraud: (1) lack or inadequacy of consideration; (2) family, friendship or other close relationship between the transferor and transferee; (3) retention of possession, benefit or use of the property in question; (4) financial condition of the transferor prior to and after the transaction; (5) conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence of trust or trust relationship; (8) existence or cumulative effect of pattern or series of transactions or course of conduct after the pendency or threat of suit; (9) instrument affecting the transfer suspiciously states it is bona fide; (10) a voluntary gift from the debtor to family member; and (11) general chronology of events and transactions under inquiry. *MWI Veterinary Supply Co. v. Rodgers (In re Rodgers)*, 315 B.R. 522, 531 (Bankr. D.N.D. 2004).

While some of the "badges of fraud" listed above are present in this case, questions involving a person's state of mind generally are factual issues and usually are not appropriate for resolution by summary judgment. *Bilandzic v. Fishman (In re Fishman)*, 215 B.R. 733, 735 (Bankr. E.D. Ark. 1997) (citing *McGee v. Hester*, 724 F.2d 89, 91 (8th Cir.1983) ("Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.")). Courts are to take a conservative view of the creditor's evidence because denial of a discharge is a harsh penalty and, accordingly, § 727 is to be strictly construed in favor of the debtor. *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011). Nevertheless, fraudulent intent is presumed where the debtor has gratuitously conveyed valuable property. *The Abbott Bank-Hemingford v. Armstrong (In re Armstrong)*, 931 F.2d at 1239. When a gratuitous transfer has been shown, as it has been here, the burden shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors. *Id.* Accordingly, a trial will be scheduled at which the sole issue to be determined will be whether Mr. White made the transfer with intent to hinder, delay, or defraud creditors.

Because there were no § 727(a)(2) allegations made against Mrs. White, there appears to be no reason she should be subject to the possible denial of a discharge and the plaintiff should move to dismiss her from this case.

IT IS ORDERED: The plaintiff's motion for summary judgment (Fil. No. 35) is denied. The Clerk of the Bankruptcy Court shall schedule a half-day trial in this matter. This Order will not be final for purposes of appeal until a final judgment is entered after the trial to be scheduled.

DATED: February 12, 2014.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Galen E. Stehlik
    *Richard P. Garden, Jr.
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.